[Crim. No. 2092. First Appellate District, Division One.—December 22. 1939.]

In the Matter of the Application of FRED C. CAMPBELL for a Writ of Habeas Corpus.

Fred C. Campbell, *in pro. per.*, for Petitioner.

Earl Warren, Attorney-General, and F. Walter French, Deputy Attorney-General, for Respondent.

GOODELL, J., *pro tem.*—The petitioner claims that he is unlawfully imprisoned and restrained of his liberty. He was received at San Quentin on April 18, 1925, after conviction of robbery, and in due time the prison board fixed his term at ten years on one count and five years on another, to run consecutively. The deduction of five years and seven months allowable as credit for good conduct left nine years and five months to be served, and it was provided that the last four years and six months could be on parole. On November 18, 1930, he was paroled, with permission to go to Denver, Colorado, where he had employment. On April 28, 1931, he was arrested for robbery in Denver, and at the June, 1931, meeting of the board the parole officer made a showing that petitioner had been tried for robbery, convicted, and sentenced to a term of from ten to twelve years in the Colorado penitentiary, whereupon the board ordered that his parole be suspended and revoked pending investigation, and that he be returned to custody. On March 19, 1937, petitioner was released from the Colorado penitentiary, and on March 24, 1937, was again lodged in San Quentin. On April 8, 1937, at a hearing held by the board, after due notice to the prisoner, he pleaded guilty to a violation of his parole, whereupon the board declared a forfeiture of .the five years and seven months' credit. The time spent by

petitioner outside San Quentin, between June 27, 1931, when his parole was suspended, and March 19, 1937, when he was taken into custody by the California officers, is five years, eight months and twenty-two days, which when added to April 18, 1940 (the expiration of the fifteen years' term without credits), would fix the date for petitioner's release as January 9, 1946.

In 1931 the legislature (Stats. 1931, pp. 1053, 1058) added to section 1168 of the Penal Code (effective August 14, 1931) the provision that ''From and after the suspension, cancellation, or revocation of the parole of any prisoner and until his return to custody he shall be deemed an escape and fugitive from justice and no part of the time during which he is an escape and fugitive from justice shall be part of his term.'' ▇ Petitioner contends that because this statute was not in effect when his parole was suspended it cannot apply to his case, and that it would operate retroactively as an *ex post facto* law if so applied; that his term expired on May 18, 1935, and that his extradition from Colorado and his confinement ever since have been illegal. In other words, petitioner's position is that because there was no statutory provision on the subject, the five years eight months and twenty-two days should be credited as time actually served on his California sentence, *notwithstanding he was then serving time in the penitentiary of another state.* While it is true that in 1931 the legislature for the first time wrote that provision into the statute, the enactment was nothing but a statutory declaration and codification of what had been the law of this state for forty years, as declared by judicial decisions, for as far back as 1891 the Supreme Court in *Ex parte Vance,* 90 Cal. 208 [27 Pac. 209, 13 L. R. A. 574], held that the time of a prisoner's absence from imprisonment in violation of law ''cannot be considered as having been spent in jail, in satisfaction of the judgment'' and is ''in effect, a technical escape, from which he can derive no advantage''. In that case Vance had been sentenced to pay a fine of $300 and to be imprisoned in the county jail until the fine was paid at the rate of one day for every dollar of the fine. Four days after sentence he was released by the sheriff and remained at liberty for over a year and a half. Upon being rearrested he contended, as this petitioner contends, that the term of his sentence had

expired. Vance also contended that there had been no legal suspension of the judgment. In denying these claims the court said, "it would seem from the mere statement of the proposition that the contention . . . cannot be sustained". See, also, *People* v. *Patrich,* 118 Cal. 332 [50 Pac. 425] , and *In re Collins,* 8 Cal. App. 367, 370 [97 Pac. 188]. In *In re Tanner,* 178 Cal. 792 [175 Pac. 81], the petitioner claimed, on *habeas corpus,* that he was entitled to have credited as part of his time served, six months and eighteen days while he was in the Ohio penitentiary (after completing a term of imprisonment therein for an Ohio offense) awaiting the arrival of officers to return him to California to complete his term, after a violation of parole. If these six months and eighteen days should have been credited, then the writ should have been granted, for his term would have expired. Tanner in that case did not go so far as to claim, as petitioner does here, that the time served on the Ohio sentence itself counted. The court held that he "was not, while in the Ohio prison, imprisoned in execution of the California judgment, and that he cannot be credited with any portion of such time". The Tanner case was followed in *In re Sichofsky,* 201 Cal. 360, 365 [257 Pac. 439, 53 A. L. R. 615], where there is a full and comprehensive discussion of this subject. At page 364, the court says: "An equally absurd situation would arise in a case where a criminal who had been tried and convicted for an offense against our state laws, but who had escaped before his actual incarceration in our state prison and while thus a fugitive from justice had committed a crime against the laws of another jurisdiction and had been there arrested, indicted, convicted, and sentenced to prison in that jurisdiction, would be also serving time there for the crime for which he was convicted and sentenced here, but for which, by reason of his escape, his actual commitment in the state prison had been rendered for the time being impossible." The situation thus characterized as absurd is essentially the situation presented by the instant case. *In re Forbes,* 108 Cal. App. 683 [292 Pac. 142], is directly in point. There Forbes, after violating his parole, served six months in a county jail in California, whereas this petitioner, after violating his parole, served over five years in the penitentiary in Colorado. In the Forbes case it is pointed out (p. 687) that under the holding in *Ex parte*

*McGuire,* 135 Cal. 339 [67 Pac. 327, 87 Am. St. Rep. 105], Forbes should have been returned to Folsom instead of being sent to the county jail; in the instant case that rule could not have been invoked, for Campbell had violated the law of a sister state, and that jurisdiction had a right to hold and punish him for his offense. *In re Daniels,* 110 Cal. App. 638 [294 Pac. 735], presented precisely the same question as the Forbes case, and the same result was reached. There the court said: "While a prisoner remains without the prison walls after his parole has been revoked, in effect, he may be deemed to be an escaped prisoner or a fugitive from justice, during which period he may not claim the benefit of the running of his sentence." It is interesting to note that the 1931 amendment to section 1168 is in substantially this language. *In re Sommers,* 135 Cal. App. 541 [27 Pac. (2d) 649], and *In re Falconi,* 22 Cal. App. (2d) 604 [71 Pac. (2d) 948], are to the same effect. In each of the four cases last cited the suspension of the prisoner's parole took place before the 1931 amendment of section 1168; yet in each of them the rule which that amendment enunciated was applied in the absence of statute. It is therefore clear from the three Supreme Court cases (Vance, Tanner and Sichofsky, *supra*) and from these four cases in the District Court of Appeal, that said rule had been the law of this state for four decades before it was put into statutory form in 1931. That rule of course is applicable to petitioner's case.

*In re Herriff,* 104 Cal. App. 222, [285 Pac. 927], upon which the petitioner relies, is distinguishable from the case at bar. An examination of the record in that case shows that the board made an order on February 9, 1929, suspending the parole but did nothing thereafter toward forfeiting the prisoner's credits. Twenty-three days later, on March 4, 1929, Herriff's term, *as reduced by credits,* expired. Herriff had violated his parole and had been arrested by a parole officer on January 9, 1929. He was turned over to the police and later pleaded guilty to a violation of section 476a of the Penal Code, and was sentenced to serve one year in the county jail in San Francisco, where he was confined until his term therein expired on January 17, 1930. Then, other things being equal, he would have been entitled to his liberty. The sheriff, however, detained him on a "hold"

of the state parole officer until February 3, 1930, when he filed his petition for a writ of *habeas corpus*. The sheriff's return to the writ showed that Herriff was then held in custody "by virtue of a certain warrant of arrest issued by the State Board of Prison Directors on the 9th day of February, 1929". In other words, from January 9, 1929, when he was arrested by the parole officer, until the *habeas corpus* proceeding in February, 1930, *a period of over a year*, the prison authorities had done nothing toward forfeiting Herriff's credits, notwithstanding he should have been returned to prison. (*Ex parte McGuire, supra.*) In the meantime, on March 4, 1929, his term—with credits not forfeited—had expired and the petition for a writ was filed almost eleven months thereafter. The decision in the Herriff case seems to turn upon the point that the law (Stats. 1915, p. 981) provides that no credits can be forfeited without notice to the prisoner, and a hearing. In the Herriff case the prisoner's credits were never forfeited; in the case at bar they were forfeited at a hearing, on notice, at which petitioner pleaded guilty to violating his parole, which hearing was long before the expiration of his term. The Herriff case must be read in the light of the facts which we have summarized, which show that the cases are distinguishable.

The writ is discharged and the proceeding is dismissed.

Peters, P. J., and Ward, J., concurred.