(No. 29865.—

THE PEOPLE *ex rel.* Daniel Hesley, Petitioner, *vs.* JOSEPH E. RAGEN, Warden, Respondent.

*Opinion filed March 19, 1947.*

DANIEL HESLEY, *pro se.*

GEORGE F. BARRETT, Attorney General, (EDWARD WOLFE, of Springfield, of counsel,) for respondent.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Daniel Hesley, an inmate of the Illinois State Penitentiary at Joliet, filed herein his original petition for a writ of *habeas corpus.* The writ was ordered issued and respondent filed his return and also a motion to quash. On November 12, 1946, the court entered an order taking the motion to quash with the case, ordering the issues closed and briefs to be filed in accordance with the rules of this court.

Hesley was convicted of robbery in the Federal court at Hammond, Indiana, and was sentenced to the Federal

penitentiary for a term of twenty-five years. He was taken to the penitentiary at Leavenworth, Kansas, on or about July 9, 1926, to commence the service of his sentence imposed in the Federal court. After the delivery of petitioner to the penitentiary, he was, on July 20, 1926, indicted in the criminal court of Cook county for the crime of murder. Thereafter, the cause was continued from time to time and was finally set for trial on April 26, 1927. Prior thereto, a petition for a writ of *habeas corpus ad prosequendum* was filed by the State's Attorney in the criminal court of Cook county, who sought to have the petitioner returned from the Federal penitentiary to the criminal court of Cook county for trial on his indictment for murder.

Pursuant to this writ, the warden of the Federal penitentiary at Leavenworth produced the petitioner in open court, who, being represented by counsel, after arraignment, entered a plea of not guilty. He was tried by a jury, found guilty, and his punishment fixed at twenty-five years in the penitentiary. A motion for a new trial was filed but later withdrawn and he was sentenced by the court to the Illinois State Penitentiary for a term of twenty-five years. On the same day, April 23, 1927, the court entered an order dismissing the writ of *habeas corpus* and remanding the petitioner to the custody of the warden of the Federal penitentiary at Leavenworth, Kansas.

Petitioner remained in the said Federal penitentiary until August 25, 1938, when he was transferred to the Federal penitentiary at Alcatraz, California, where he remained until about May 1, 1942, when he was again transferred from the Federal penitentiary at Alcatraz to the Federal penitentiary at Leavenworth, Kansas. His sentence was due to expire on or about August 15, 1942. On or about August 4, 1942, the Governor of Illinois presented to the Governor of Kansas a request for the extradition of the petitioner as a fugitive from justice. The requisition

was honored and the petitioner was returned to Illinois and delivered to the Illinois State Penitentiary at Joliet, on or about August 27, 1942, where he is now incarcerated and serving his sentence for the crime of murder.

Petitioner contends that his imprisonment is illegal and that he is entitled to his discharge in accordance with the provisions of subsection 3 of section 22 of the Habeas Corpus Act. (Ill. Rev. Stat. 1945, chap. 65, par. 22.) He presents the following as grounds for discharge: (1) That the court did not suspend execution of the judgment imposed on April 23, 1927, and that no ministerial officer may disobey the mandate of the court by turning him over to another jurisdiction; (2) that the court was in error in demanding that petitioner be returned to the State of Illinois to commence service of a judgment that had expired two years prior to his commitment, and that he was not a fugitive from justice as charged by the State's Attorney of Cook county; (3) that the maximum term, twenty-five years, "less statutory good time allowed by law," expired before petitioner was returned and imprisoned in the Illinois State Penitentiary; and, (4) that the constitution of the State of Illinois supersedes any and all acts created by State legislatures and arbitrary acts of ministerial officers.

Petitioner first contends the court did not suspend execution of the judgment, and that the mandate was violated by turning him over to another jurisdiction. The effect of the judgment, as well as its force and validity, must be determined by the judgment itself when supported by the record. The question to be determined by the record here is whether or not the court had jurisdiction of the subject matter and the person of the defendant, and had the power and authority to enter the judgment which it entered. That such jurisdiction and power was present could hardly be questioned, and, under such circumstances, we hardly see how the court, in entering the judgment, in any way ex-

ceeded its power and jurisdiction. Having been sentenced by a court having jurisdiction, petitioner could only be discharged from serving said sentence in the manner provided by the laws of Illinois. This court has repeatedly held that a sentence of imprisonment can only be satisfied by actual imprisonment for the period of time fixed by the judgment of the court, unless such sentence be remitted in a manner provided by law. We held in the case of *People ex rel. Kelly* v. *Ragen*, 392 Ill. 423, that the judgment is conclusive, and the unserved part of the penalty imposed remained in full force, notwithstanding the defendant, having been released on bail and having failed to appear, was not reincarcerated for more than twelve years. Unless a prisoner has suffered the actual imprisonment in conformity with the terms and conditions of the judgment, he cannot be discharged unless his sentence has been remitted in some manner provided by law. *People ex rel. Ross* v. *Ragen*, 392 Ill. 465; *People ex rel. Barrett* v. *Crowe*, 387 Ill. 53; *People ex rel. Ross* v. *Becker*, 382 Ill. 404; *Purdue* v. *Ragen*, 375 Ill. 98; *People ex rel. Barrett* v. *Dixon*, 387 Ill. 420; *Zerbst* v. *Kidwell*, 304 U. S. 359, 58 Sup. Ct. 872; *Anderson* v. *Corrall*, 263 U. S. 193, 44 Sup. Ct. 43.

Petitioner's contention that the court had no power to remand him to the custody of the Federal authorities is met with the record which discloses that he was produced in court pursuant to a writ of *habeas corpus ad prosequendum* issued by the criminal court of Cook county and honored by the Federal authorities. He was at all times a Federal prisoner and was never out of the custody of the warden of the Federal penitentiary at Leavenworth, Kansas.

This court in the case of *People ex rel. McCarthy* v. *Ragen*, 389 Ill. 172, had an occasion to pass on a case involving similar facts, and there said: "In June, 1934, petitioner stood charged with having violated the laws of

two sovereignties. He had the right to a fair trial, according to the law of the sovereignty he was alleged to have violated, but he could not use the charge in one jurisdiction to prevent his trial on the charge in the other jurisdiction. (*Ponzi* v. *Fessenden*, 258 U..S. 254, 66 L. ed. 607.) The law provides a means by which a sovereign, who has in its jurisdiction one who has been convicted of violating its laws, may deliver such convicted person to the court of a different jurisdiction for trial, without losing its right to have him returned to serve his sentence. (*Ponzi* v. *Fessenden*, 258 U. S. 254, 66 L. ed. 607.) The record in this case does not show who, if anyone, representing the United States, consented that petitioner might be taken to the criminal court for trial, but even though he was taken there without previous consent, it is not a matter which affects the jurisdiction of the criminal court to try him on the indictment pending there. *People* v. *Speece*, 367 Ill. 76; *People* v. *Berardi*, 332 Ill. 295."

It has been held that no rights of a prisoner are violated who, while serving a Federal sentence, is delivered to a State court for trial for an offense against the State laws. (*People* v. *Berardi*, 332 Ill. 295; *Ponzi* v. *Fessenden*, 258 U. S. 254, 66 L. ed. 607; *Vanover* v. *Cox*, 136 Fed. 2d 442; *Rigor* v. *State*, 101 Md. 465.) It has also been held that the fact that the Federal authorities deliver a prisoner to a State court for trial does not violate any of the due-process provisions of the Federal or State constitutions. *People ex rel. McCarthy* v. *Ragen*, 389 Ill. 172; *Ponzi* v. *Fessenden*, 258 U. S. 254; *Wall* v. *Hudspeth*, 108 Fed. 2d 865; *Vanover* v. *Cox*, 136 Fed. 2d 442; *Rigor* v. *State*, 101 Md. 465; *Kelley* v. *Oregon*, 273 U. S. 589, 47 Sup. Ct. 504; *Kirk* v. *Squier*, 150 Fed. 2d 3; *United States* v. *McDonnell*, 153 Fed. 2d 919; *United States* v. *Farrell*, 87 Fed. 2d 957; *United States* v. *Warden*, 141 Fed. 2d 259, cert. den. 64 Sup. Ct. 633; *Fowler* v. *State*, 196 Ga. 748, 27 S. E. 2d 557; *State* v. *Conway*,

351 Mo. 126, 171 S. W. 2d 677; *Jones* v. *Hiatt,* 50 Fed. Supp. 68.

It is the contention of petitioner that he was not a fugitive from justice and that he was unlawfully returned to the State of Illinois by extradition from the State of Kansas. Even if it could be said that he was unlawfully returned to the State of Illinois by extradition, this question cannot be raised in a *habeas corpus* proceeding. The record discloses petitioner was present in open court and no question was raised concerning the authority or jurisdiction of that court to impose the judgment which was actually imposed upon him. The trial court will not inquire into the legality or illegality of the delivery of a fugitive from justice to the demanding State. The question whether the prisoner was lawfully or unlawfully surrendered to the demanding State affects neither the guilt or innocence of the accused, nor the jurisdiction of the trial court to try him. (*People* v. *Klinger,* 319 Ill. 275; *People ex rel. Barrett* v. *Dixon,* 387 Ill. 420; *People ex rel. McGee* v. *Hill,* 350 Ill. 129.) It has also been held that a person remains charged with crime within the meaning of the constitutional and statutory provisions relating to extradition although he has been convicted, where the judgment of conviction remains unsatisfied. (*United States* v. *McClain,* 42 Fed. Supp. 429; *Hughes* v. *Pfanz,* 138 Fed. 980; *Rummerfield* v. *Watson,* 335 Mo. 71, 70 S. W. 2d 895; *People* v. *Mallon,* 218 N. Y. S. 432, affirmed, 245 N. Y. 521; *Ex parte Foster,* 60 Okla. Crim. 50, 61 Pac. 2d 37; *Ex parte Haynes,* 98 Tex. Cr. 609, 267 S. W. 490; *State* v. *Remann,* 165 Wash. 92, 4 Pac. 2d 866, 78 A.L.R. 412.) In the *Remann case* it was said: "The public purpose to be effected by extradition must be taken into consideration in determining the question. Its object is to prevent the successful escape of all persons accused of crime, whether convicted or unconvicted, and to secure their return to the State from whence they fled, for the purpose of

punishment. It is invoked to aid the administration of criminal justice, and to more certainly insure the punishment of the guilty." It is apparent that had the petitioner challenged the sufficiency of his extradition in the State of Kansas, contending he was not a fugitive from justice from the State of Illinois, his contentions under the above authorities could not have been sustained.

· We now come to the final and serious question in this case as to whether or not petitioner is entitled to his discharge for the reason that the sentence imposed upon him by the Illinois court ran concurrently with his Federal sentence, and that the maximum term of twenty-five years "less statutory good time allowed by law" expired before petitioner was returned and imprisoned in the Illinois State Penitentiary, there being nothing said in the judgment as rendered in the Illinois court as to whether or not his sentence was to run concurrently or consecutively with his penal service in the Federal jurisdiction.

It is urged by petitioner that judgment of cumulative punishment must be of such certainty that commencement of the second and termination of the first sentence may be seen from the record, and he cites the case of *People* v. *Decker,* 347 Ill. 258. It is true there is some language used in that case in support of petitioner's contention, but the case there was strictly encompassed by Illinois jurisdiction. Petitioner there was sentenced to the State penitentiary at Joliet for a term not to exceed the maximum term of twenty years, the sentence to begin to run upon the expiration of his present term of confinement in the Illinois State reformatory. Petitioner was taken to the penitentiary and he contended he should have been recommitted to the reformatory since his previous sentence had not expired. The court in that case held that since his reformatory sentence had not expired, he should have been recommitted to that institution and his sentence to the penitentiary should not have begun until the expiration of his

punishment in the State reformatory. It was there pointed out the court should have directed his return to the Illinois State Reformatory at Pontiac until the expiration of his punishment there, and thereupon to be transferred to the State penitentiary at Joliet under the judgment of conviction. It is apparent the jurisdiction of State courts only was involved.

We had occasion to directly consider the question as to whether or not sentences of imprisonment to different places of confinement run concurrently. In the case of *People ex rel. Courtney* v. *Thompson,* 358 Ill. 81, this court, on page 91, said: "The respondent also contends that Brown was entitled to the benefit of the rule stated in *People* v. *Graydon,* 329 Ill. 398, which is, that where a defendant is sentenced to the same place of confinement by two or more judgments of conviction, the sentences run concurrently, in the absence of a provision in the judgments themselves or in the absence of a statute to the contrary. In that decision the sentences involved had been imposed by the superior court and the criminal court but the place of confinement was the same. In the case before us the courts were of two entirely different sovereignties and the two places of confinement were also entirely different. The rule relied upon cannot be made to apply to the case of a prisoner sentenced by a State court to the State penitenitiary for an offense against State laws and the same prisoner sentenced to a Federal prison for an offense against the laws of the United States. Brown was therefore not entitled to be discharged on the pretense that his State prison sentence ran concurrently with his Federal sentence."

We also held in *People* v. *Kennay,* 391 Ill. 572, that sentences of imprisonment to different places of confinement do not run concurrently. This rule of law that State and Federal sentences do not run concurrently would appear to be definitely settled by many adjudicated cases. (*Vanover* v. *Cox,* 136 Fed. 2d 442; *Ex parte Campbell,* 36

Calif. App. 2d 221, 97 Pac. 2d 482; *Ex parte Sichofsky,*
201 Calif. 360, 257 Pac. 439, 53 A.L.R. 615.) This ques-
tion was squarely presented and determined in the case of
*Ex parte Sichofsky.* In that case the petitioner applied
for a writ of *habeas corpus* alleging that he was unlawfully
imprisoned by the warden of Folsom State Prison. He
was indicted by a Federal grand jury in and for the
Southern District of California upon the charge of hav-
ing unlawfully entered the United States from Mexico
without a passport. He entered a plea of guilty before
the Federal court and was sentenced to a term of three
years' imprisonment in the Federal penitentiary at McNeil's
Island, Wash. While he was in the custody of the United
States marshal, he was brought before the State court of
California for trial upon two separate charges of grand
larceny. He was sentenced by the California court to im-
prisonment in the penitentiary on each of said charges
with an order of commitment. He was not, however, de-
livered to the sheriff pursuant to the commitment for the
reason that his custody (as in the instant case) was with
the United States marshal, who, after his conviction and
sentence, returned the petitioner to the Federal court for
the execution of the Federal sentence. He thereupon sought
relief in the Federal courts on the ground that they no
longer had jurisdiction over his person. He was then taken
to the Federal penitentiary to serve his sentence. When
his sentence was completed he was rearrested by Federal
authorities on the charge of being unlawfully in the United
States and subject to deportation. While out on bail from
this latter offense, he was taken into the custody of Cali-
fornia authorities who delivered him to the California
State Prison at San Quentin, where he was received by
the warden on November 6, 1923. Petitioner sought re-
lease on the ground he had served the California State
sentence while in prison in the Federal penitentiary. The
court refused to sustain this contention and held that the

sentence imposed upon him by the California court did not commence to run until he was received at the California State prison. The writ there was discharged and the petitioner remanded to the custody of the warden of the San Quentin penitentiary. Support for this proposition is found also in the case of *Ex parte Campbell,* 36 Cal. App. 2d 221, 97 Pac. 2d 482. In that case the court referred to the case of *In re Tanner,* 178 Cal. 792, 175 Pac. 81, where the petitioner claimed, on *habeas corpus,* that he was entitled to have credited as part of his time served, six months and eighteen days while he was in the Ohio penitentiary (after completing a term of imprisonment therein for an Ohio offense) awaiting the arrival of officers to return him to California to complete his term, after a violation of parole. In the *Tanner case* the petitioner did not go so far as to claim that the time served on the Ohio sentence itself counted, but the court there specifically held he "was not, while in the Ohio prison, imprisoned in execution of the California judgment, and that he could not be credited with any portion of such time." This case was followed by the *Sichofsky case,* above cited. It is our judgment the sentences in this case did not run concurrently and that petitioner was not entitled to credit on the Illinois judgment for the time served in prison on his Federal conviction.

As to the last contention of petitioner, we have pointed out that no arbitrary acts of ministerial officers appear from the record in this case.

For the reasons hereinbefore expressed, it is ordered that the writ be quashed, and the prisoner remanded to the custody of the warden. *Prisoner remanded.*