**The People of the State of Illinois, Petitioner-Appellee, v. Roney R. Nunes, Respondent-Appellant.**

Gen. No. 64–70.

Fifth District.
April 23, 1965.

Clarold L. Britton, of Chicago, for appellant.

Howard Clotfelter, of Chester, for appellee.

GOLDENHERSH, J.

Roney Nunes, hereinafter called respondent, appeals from the judgment of the Circuit Court of Randolph County adjudging him to be a mentally ill person, and ordering him committed to the Department of Mental Health of the State of Illinois for admission to Manteno State Hospital. A proper presentation of the issues involved requires the review, in chronological order, of certain pertinent occurrences.

In 1954, respondent was tried by jury in the Circuit Court of Lake County and convicted of the crime of taking indecent liberties with a 12-year-old girl. He was sentenced to the penitentiary for a term of not less than 4 nor more than 12 years. In 1963 the Supreme Court issued a writ of error, and in its opinion filed on January 22, 1964, reversed the judgment without remanding, on the ground that the evidence was not sufficient to sustain the conviction. (People v. Nunes,

30 Ill2d 143, 195 NE2d 706.) At the time of the reversal, respondent was confined in the Illinois State Penitentiary at Menard, in Randolph County.

On January 24, 1964, a petition was filed by one B. C. Tiller, described therein as a reputable citizen of the State of Illinois, but not otherwise identified, seeking respondent's confinement as a mentally ill person. The petition is substantially in the form prescribed by section 5-1 of the Mental Health Code of 1951 (c 91½, § 1 et seq., Ill Rev Stats 1963). On the same day, notice of the filing of the petition was served on respondent. On January 28, 1964, counsel who had successfully represented respondent before the supreme court, filed a motion to quash the notice and dismiss the proceeding contending that because respondent was a convict, and the Mental Health Code applied only to persons not charged with crime, the court was without jurisdiction over the subject matter and the person of respondent. Respondent's motion was denied, and on February 5, 1964, the case was tried to a jury on the petition for commitment, and respondent's answer. The jury found respondent was a mentally ill person, the court entered judgment on the verdict, and on February 6, 1964, a warrant of commitment was issued. Respondent was admitted to Manteno State Hospital on February 20, 1964.

Respondent filed a post trial motion which the circuit court took under advisement. On April 13, 1964, the Manteno State Hospital issued a change in status report showing respondent to be without psychosis, and gave him an absolute discharge. On April 13, 1964, on the basis of the absolute discharge, the circuit court entered an order restoring respondent to all civil rights. On April 15, 1964, the court entered an order denying respondent's post trial motion. This appeal followed.

Respondent contends, (a) that the court was without jurisdiction because respondent, when the petition was filed was not a person "not charged with crime" and any proceeding to commit him as a mentally ill person must be instituted by the Department of Public Safety under the Penitentiaries Act (c 108, §§ 105–122, Ill Rev Stats 1963), (b) that the verdict was contrary to the evidence and the People failed to prove respondent was a mentally ill person, (c) that the court erred in refusing to give an instruction tendered by respondent.

It is the position of the People, (a) that regardless of whether respondent was, or was not, "a person not charged with crime", the court had jurisdiction over the respondent and the subject matter, (b) the evidence is sufficient to sustain the judgment, (c) the tendered instruction was properly refused.

The Mental Health Code (§ 1–8) provides that except for certain persons under control of the Youth Commission, nothing in the code shall be construed to apply to any mentally ill person who is in custody on a criminal charge. Sections 2–1 and 2–2, which vest jurisdiction over the persons of mentally deficient persons (2–1), and mentally ill persons (2–2), in the circuit court in one instance, and in the county court in the other, refer to persons "not charged with crime". Article V (§ 5–1 et seq.) provides that "any reputable citizen of the state" may file a petition seeking the commitment of a mentally ill person.

Section 8 of the Penitentiaries Act (c 108, § 112, Ill Rev Stats 1963) prescribed procedures for the commitment and treatment of mentally ill convicts. It authorized the Department of Public Safety to file petitions seeking the commitment of convicts who are believed to be mentally ill or in need of mental treatment.

58

The People argue that the Constitution (art VI, § 9) has vested unlimited original jurisdiction of all justiciable matters in the circuit court. It is respondent's contention that the proceeding to commit him is based upon a statute, and unless there was strict compliance with the statute, the court failed to acquire jurisdiction and the proceeding is void.

The courts of review of Illinois have previously considered the origin of jurisdiction in cases of mental illness. In the Case of Cowdery v. Northern Trust Co., 321 Ill App 243, 53 NE2d 43, the court, at page 256, said: "By the common law the power of control over the persons and property of lunatics and idiots belonged to the king as parens patriae and was exercised by him through the lord chancellor, not in his character of chancellor or by virtue of the general powers of the chancery court, but under a separate and distinct commission under the sign manual from the crown. The chancellor, upon petition or information, granted a writ to inquire into the party's mind and, if found non compos, generally committed the care of his person to some friend, called the committee, and the management of his estate to an heir, designated as committee of his estate. Errors in these proceedings were redressed by writ of error in the regular courts of law and not in the House of Lords as on appeal from a court of equity. After adjudication the chancellor acted in the superintendence of the lunatic's custodians or committee by virtue of his general equity powers. In this country the State succeeded to the power of the king as parens patriae, and under our form of government the power is exercised by the courts only through legislative enactment. (Citing cases.)" At page 257, the Court continued, "In Illinois the constitution (art 6, § 12) gives the circuit court 'original jurisdiction of all causes in law and equity . . .' . . . . This jurisdiction is the jurisdiction

59

'held and exercised by the English court of chancery by virtue of its general powers as a court of justice, and it does not include that special authority or jurisdiction delegated to the chancellor, individually, as a representative of the crown in its capacity as parens patriae. This latter authority, so far as it exists at all, is possessed only by the state legislatures.' "

In the case of People v. Misevic, 32 Ill2d 11, 203 NE2d 393, at page 395, the Supreme Court, through Mr. Justice Daily said, "The State, as parens patriae, exercises the same control over insane persons as was formerly exercised in England by its king, and under our form of government the power is exercised by the courts only through legislative enactments. (Citing cases.) Stated differently, it is the function of the legislature to pass laws for regulation of the property and person of those who are insane, and the judicial power may be exercised only in conformity with such laws."

A court of general jurisdiction is presumed to have jurisdiction to render any judgment entered by it. Bartunek v. Lastovken, 350 Ill 380, 183 NE 333. Every reasonable presumption will be indulged in favor of its jurisdiction. Matthews v. Hoff, 113 Ill 90. (See discussion and cases, 14 ILP 173.) However, no such presumption prevails in connection with special statutory jurisdiction. In such cases jurisdiction is never presumed, and whatever the jurisdiction of the court, the proceedings must be in strict conformity with the statute. Brown v. Van Keuren, 340 Ill 118, 172 NE 1. As said in Chicago v. Hitt, 334 Ill 619, at page 628, 166 NE 517, "A court of general jurisdiction may have a special statutory jurisdiction conferred upon it not exercised according to the course of common law and which does not belong to it as a court of general juris-

diction. Nothing is taken by intendment in favor of the jurisdiction of a court of limited jurisdiction, or of a court of general jurisdiction while exercising special or limited powers. In the latter case the record must show the facts which authorize the court to act, and a judgment rendered without jurisdiction may be treated as void everywhere."

It appears, therefore, that if respondent, at the time the petition was filed, was a person charged with crime, the proceeding lacked the requisite strict conformity with the provisions of the Mental Health Code. The opinion reversing his conviction was filed on January 22, 1964. The time for filing a petition for rehearing expired on February 6, 1964. Supreme Court Rule 44. Final process could not issue until 15 days following the filing of the opinion. Supreme Court Rule 45. Until a mandate could issue, respondent was in custody, and until released, was a convict confined by reason of the conviction in Lake County.

■■ We find no cases in this jurisdiction wherein an appellate court has construed the term "not charged with crime." The converse, "charged with crime," has been considered. In the case of People v. O'Neill, 378 Ill 324, at page 328, 38 NE2d 174, the court said, "The phrase 'charged with a crime' does not cease or merge in a conviction, but remains in force until the sentence has been performed and the judgment satisfied." Respondent's judgment of conviction could be satisfied in one of two ways, completion of his term or its termination by legal process. People v. Ragen, 396, Ill 554, 72 NE2d 311. Until discharged by appropriate legal process, he was a convict sentenced and incarcerated by virtue of the Lake County judgment, and therefore was not, at the time these proceedings were commenced, "a person not charged with crime."

In view of respondent's absolute discharge as psychosis free less than 60 days after he was received at Manteno, we have some reservations as to the correctness of the verdict finding him to be a mentally ill person. The diagnosis of the physicians employed by the Department of Public Safety was, in one instance, paranoia or paranoid disease, and in the other, a paranoid state with schizophrenic reactions. The principal symptom relied upon was an alleged persistent delusion of persecution. A review of respondent's experiences suggests the possibility that his feelings of persecution may have been more real than illusory. It should be noted that with the reversal of his conviction, the "delusions" disappeared, and he was diagnosed to be without psychosis.

In view of the conclusion reached, we need not consider the remaining issues raised by the parties. The judgment of the Circuit Court of Randolph County is reversed.

Judgment reversed.

EBERSPACHER, P. J. and MORAN, J., concur.