[No. 12200. In Bank. —October 23, 1888.]

IN THE MATTER OF THE ESTATE OF EMMA COOK, ALSO CALLED EMMA RICHARDS (NEE EMMA STRASBERGER), DECEASED. WILLIAM E. MILLER, APPELLANT.

JUDGMENT — RENDITION OF — NEED NOT BE IN WRITING. — A judgment becomes "rendered" at the time the court pronounces its decision, and it is not necessary to its validity that it should be in writing or signed by the judge.

ID. — ENTRY — DIVORCE. — A judgment of divorce becomes operative between the parties at the time of its rendition, notwithstanding it be not entered by the clerk until a subsequent date.

ID. — ABSENCE OF FINDINGS — DEFAULT. — The mere absence of findings does not render a judgment void in any case, and in a case of default, findings are not necessary, and form no part of the judgment roll.

ID. — DUTY OF CLERK TO ENTER JUDGMENT. — After the rendition of a judgment, it is the duty of the clerk to enter it; and the fact that the entry was made at the request of a person not a party is immaterial.

ID. — NOTICE OF ENTRY. — The party against whom the judgment was rendered is not entitled to notice of its entry.

ID. — ENTRY OF JUDGMENT OF DIVORCE AFTER DEATH OF PARTY. — A judgment of divorce rendered in favor of a party during her lifetime may be entered after her death.

ESTATE OF DECEASED PERSON — PETITION FOR FINAL DISTRIBUTION. — A petition by an administrator for the final distribution of the estate of

the decedent should not contain averments for the purpose of charging a distributee with, and compelling him to account for, property of the deceased which came into his possession in a foreign state.

APPEAL from a decree of the Superior Court of the city and county of San Francisco distributing the estate of a deceased person, and from an order refusing a new trial.

The facts are stated in the opinion.

*Henry C. McPike,* and *James M. Seawell,* for Appellant.

*Tilden & Tilden, Eugene N. Deuprey, L. M. Hoefler,* and *James G. Carson,* for Respondents.

McFARLAND, J.—After a more mature consideration of this appeal, upon rehearing,. we are satisfied that the court below was in error, and that the decree appealed from must be reversed.

The appeal is taken by William E. Miller, assignee of William W. Richards, from a decree of distribution, by which the estate of the deceased was distributed, one half to her mother, Mary A. Strasberger, and the other half to Theodore T. Cook, who was adjudged to be the surviving husband of the deceased. As the deceased left no issue, or father, one half of her estate went to her mother, and the other half to her surviving husband; and the question to be determined was, whether the said Theodore T. Cook, or the said William W. Richards, was such surviving husband.

Upon the trial of this issue, Cook proved that he was married to the deceased (whose maiden name was Emma Strasberger), on the twenty-sixth day of December, 1873. It was alleged and claimed on the part of said Richards and his assignee, Miller, that the deceased was divorced from said Cook; that afterward, on May 30, 1880, she was legally married to the said Richards, and that Richards, from the date last named, was, and continued to be,

her lawful husband until her death. To maintain this issue on his behalf, Miller offered in evidence a certain judgment roll duly authenticated. To the introduction of this judgment roll Cook objected, upon the grounds that the decree of divorce therein contained was entered on petition of said Richards, who was a stranger to the record; "that there is no foundation for the same, and that it is not a decree"; that it was entered after the death of the plaintiff to the action, and without notice; that there were no findings to support it, and that the papers constituting the judgment roll are immaterial, irrelevant, and incompetent. The court sustained the objections, and appellant excepted. The appellant then offered to prove the marriage of the deceased to Richards after the alleged divorce, and the assignment by the latter of all his right and interest in the estate in California, and in the hands of the administrator, to Miller. This offer was objected to upon substantially the same grounds as above stated, and the objection was sustained. These two rulings are assigned as error, and present the point involved.

The judgment roll offered in evidence shows, substantially, these things: The deceased, Emma Cook, commenced an action in March, 1880, in the superior court of San Francisco against the said Theodore T. Cook, to obtain a divorce. The complaint was sufficient in form and substance, and averred willful neglect as the cause of action. Summons was duly issued March 20, 1880, and was personally served on the defendant on the same day in the city and county of San Francisco. The defendant not answering or appearing, default was entered against him on the 6th of April, 1880. The decree contained in said judgment roll was entered on the eighth day of September, 1885, *nunc pro tunc* as of the twenty-third day of April, 1880. It recites that the action came on regularly for hearing on the 6th of April, 1880; that the issuance and service of the summons, and the de-

fault of defendant appearing, the case was referred to
F. W. Lawler, a referee, to take proof of all the material
allegations, and report the same to the court; and that
said referee made his report.  The said decree proceeds
as follows: "The report of said referee having been
finally filed in this action, and this action having been
finally submitted on the twenty-third day of April, A. D.
1880, and this court having then fully considered the
same, and ordered that a decree be entered therein in
favor of said plaintiff dissolving the bonds of matri-
mony, then, on said twenty-third day of April, A. D.
1880, and theretofore existing between the said plaintiff,
Emma Cook, and the said defendant, Theodore T. Cook,
on the ground of willful neglect, which said judgment of
said court was duly rendered in open court by this court
on said twenty-third day of April, A. D. 1880, and then
and there entered in the minutes of said court; and this
court, upon petition of William W. Richards, filed herein
on the fourth day of September, A. D. 1885, having on
the seventh day of September, 1885, ordered, adjudged,
and decreed that the said decree of divorce ordered by
said judgment of said court to be entered in favor of
said plaintiff as aforesaid on said twenty-third day of
April, A. D. 1880, be forthwith entered by the clerk
of this court *nunc pro tunc* as of said twenty-third day
of April, A. D. 1880, and that the judgment roll in this
action be forthwith made and filed by the clerk of this
court *nunc pro tunc* as of said twenty-third day of April,
A. D. 1880,—it is now therefore considered, ordered, ad-
judged, and decreed by this court," etc.  The decree
then proceeds to dissolve the bonds of matrimony be-
tween the parties as of April 23, A. D. 1880.  The
deceased, Emma Cook, who was the plaintiff in said
action, died in the month of November, A. D. 1883, and
of course was not living at the date of the entry of
this decree.  And counsel for respondent contends,—1.
That the action taken by the court on April 23, 1880,

and recited in said decree, was not in any sense or for any purpose a judgment, and had no effect whatever upon the marriage relations of the parties; and 2. That the decree of September, 1885, was of no avail, because at the time of its entry one of the parties was dead.

The deceased, no doubt, considered that she was divorced on April 23, 1880, and could lawfully enter into a second marriage. It is averred in the petition of Richards that the said Theodore T. Cook also entered into a second marriage before the death of the deceased; and although there is no proof on that subject in the record, yet it may be fairly presumed, from his apparent acquiescence in the second marriage of the deceased until after her death, that he also supposed that a divorce had taken place, and that he could lawfully marry again if he so elected. If, therefore, the question here presented were a doubtful one, the leaning of the court should be in favor of the validity of the second marriage, and against the implication of bigamy.

We think, however, that former decisions of this court have with sufficient clearness solved the problem here involved against the contention of respondent. In those decisions a plain distinction is established between the *rendition* of judgment and its *entry* in the judgment book.

In *Gray* v. *Palmer*, 28 Cal. 416, the question was whether an appeal from a judgment had been taken in time, the statute then requiring the appeal to be taken within one year after "the rendition of the judgment." In that case the judgment had been rendered more than two months before it had been entered by the clerk; and the appeal had been taken within a year after the entry, but not within a year after the rendition. And the court held that the appeal was too late.

Justice Sawyer, in delivering the opinion of the court, says: "After a careful review of these and other sections

of the Practice Act, we cannot resist the conclusion that the terms 'rendition' and 'entry' are used in different senses, and to express the idea appropriate to those words respectively; and that there is a rendition of a judgment before it is actually entered in the judgment-book. Different stages of the proceeding are recognized by the statute as initial points from which other proceedings may be taken or other rights acquired. Thus the right of appeal attaches, and the time for taking it commences to run, from the rendition of the judgment by the court; the right to issue execution, from the time of the entry of the judgment rendered; and the judgment lien upon real estate attaches from the docketing of the judgment rendered and entered."

And again: "Upon the construction given by us, there are not two final judgments, as is argued by appellant. The clerk enters the judgment rendered by the court. The court pronounces the judgment, and the clerk performs the ministerial duty of entering it. The judgment rendered is the judgment entered."

In *Casement* v. *Ringgold*, 28 Cal. 335, it was held (at a time when the statute provided for stated terms of court) that when the court had pronounced a judgment it became the judgment of the court of the term at which it had been rendered, and that the clerk could perform the ministerial duty of entering it in the judgment-book after the expiration of the term. And the opinion in this case refers to *McMillan* v. *Richards*, 12 Cal. 467, and *Hutchinson* v. *Bours*, 13 Cal. 52, in which cases the entry of a judgment by the clerk is referred to as a mere ministerial act.

The same doctrine is clearly stated in *Peck* v. *Courtis*, 31 Cal. 209; *Genella* v. *Relyea*, 32 Cal. 159; *McLaughlin* v. *Doherty*, 54 Cal. 519; and in other cases decided by this court.

And in the *Estate of Newman*, 75 Cal. 213, the very point here involved seems to have been definitely set-

tled. The only difference between that case and the one at bar is, that in the former the decision of the court — that is, the rendition of the judgment — was in writing, and signed by the judge of the court, and filed with the clerk. But, as we shall see, those circumstances gave no additional significance or validity to the rendition of the judgment. One of the questions in the Newman case was, When did the judgment of divorce take effect as between the parties? And the court say: "The decree was signed by the judge on October 19, and was filed with the clerk on October 22, 1885. Thus rendered, it was binding on the parties and privies, although not entered until January 5, 1887. The clerk could not, by his failure to perform a ministerial duty, abridge the rights of any party interested."

If it were necessary to refer to general authorities, it would be found that their drift is the same way. Freeman, in his work on judgments, states the essence of the cases as follows: "Expressions occasionally find their way into reports and text-books, indicating that the entry is essential to the existence and force of the judgment. These expressions have escaped from their authors when writing on matters of evidence, and applying the general rule that in each case the best testimony which is capable of being produced must be received, to the exclusion of every means of proof less satisfactory and less authentic. The rendition of a judgment is a judicial act; its entry upon the record is merely ministerial. . . . . That which the court performs judicially, or *orders to be performed*, is not to be avoided by the action or want of action of the judges or other officers of the court in their ministerial capacity." (Section 38.)

In *Cal. S. Tel. Co.* v. *Patterson*, 1 Nev. 151, which was a well-considered case, the question was, What constitutes a judgment? And the court say: "This motion seems to be based upon a misapprehension of what constitutes a judgment; and counsel seem to have

confounded the judgment itself with the entry or record thereof. The judgment is a judicial act of the court; the entry is the ministerial act of the clerk. The judgment is as final when pronounced by the court as when it is entered and recorded by the clerk, as required by statute. . . . . The decision of the court is the judgment; the entry by the clerk is the evidence of it."

The current of English and American authorities is to the same point.

In some of the cases decided by this court and cited above, the judge, at the time of the rendition of the judgment, had prepared a written decision, generally in the form of a decree, and had in some instances filed it with the clerk; and counsel for respondent contends that those cases are not authority here, because in *Cook* v. *Cook* no such written decision or decree had been prepared, signed, or filed. But there is no statutory provision for the signing of a judgment by the judge either before or after entry; and his signature gives to it no additional solemnity or validity. (*Clink* v. *Thurston*, 47 Cal. 29.) Where that practice is adopted, it is merely to give the clerk surer means of correctly entering what has been adjudged. But when, after the trial and final submission of the case, the court pronounces a judgment in apt language, which finally determines the rights of the parties to the action, and leaves nothing more to be done except the ministerial act of the clerk in entering it, and especially when what the court has pronounced has been entered in the minutes, then the judgment has been rendered, and the rights of the parties established. And such was the case in *Cook* v. *Cook*, whether we take the recitals in the decree entered in 1885 or the entry in the minutes in 1880, as stated in the petition of Richards.

In *Peck* v. *Courtis*, *supra*, no form of judgment had been written or signed by the judge. In that case the court say: "As to the final judgment from which an appeal is taken, it appears from the record that 'the cause having

come on to be heard before the court on the twenty-sec-
ond day of December, 1863, upon the report of the referees,
and the court having been sufficiently advised thereon,
it was ordered, adjudged, and decreed by the court that
the said report of said referees be confirmed, and that
*judgment be entered* according to said report, and that said
partition be effectual forever.' The judgment thus ren-
dered on the twenty-second day of December, 1863, was
not in fact 'entered' in the judgment-book by the clerk till
July 25, 1864, some six months afterwards. But an ap-
peal from a final judgment must be taken 'within one
year after the rendition of the judgment.' The time
begins to run from the time when the judgment is ren-
dered, not from the time when it is entered. The rendi-
tion and entry of a judgment are entirely different things,
—the one is to be performed by the court, and must be
first in order of time, and the other by the clerk." (31
Cal. 209.)

In *Genella* v. *Relyea*, 32 Cal. 160, the court say: " The
court announced its judgment, and the order for judg-
ment was entered in the minutes of the court on the
15th of August, 1865. The judgment was therefore ren-
dered, and the time for taking an appeal commenced to
run *on that day*."

In *Cal. S. Co.* v. *Patterson*, 1 Nev. 155, above cited, the
court, on rehearing, say: "When a judge orders a judg-
ment in a cause, and that order is entered in the journal
or minutes of the court, and no further facts are to be
ascertained to determine the exact amount and character
of that judgment, but there simply remains the clerical
duty of entering in the judgment-book that which the
court has determined and ordered to be entered, this in
our opinion is a final judgment from which an appeal
lies."

Counsel for respondent contends that the case of
*Macnevin* v. *Macnevin*, 63 Cal. 186, is in conflict with the
other cases above cited. That case is very meagerly

reported, and the precise point under discussion here was apparently not argued by counsel, or considered by the court.  The court below in that case announced its decision in favor of defendant, and then made an order vacating certain allowances which it had granted plaintiff for alimony and counsel fees.  From this order plaintiff appealed before there had been any entry of the general judgment in the case; and this court held that the order was not appealable as an order made after final judgment. But at that time the code had been changed so as to provide that an appeal from a final judgment could not be taken until after *entry;* and all that the court can be considered as having decided in the case was, that, as an appeal from a judgment could not be taken until after its entry, therefore, for the purpose of an appeal, no order could be considered as an order made after final judgment which had not been made after the entry of the judgment.

In *Condee* v. *Barton*, 62 Cal. 1,—also relied on by respondent,—when the court had announced its findings of facts, and its conclusion of law upon said facts, that plaintiffs were not entitled to judgment, plaintiffs immediately moved that the conclusion of law be set aside, and that judgment upon the facts found be given for plaintiffs. Thereupon the court ordered that the entry of judgment be stayed until said motion could be heard, and upon the hearing of the motion the court ordered judgment for plaintiffs.  Upon appeal this court held that the course adopted by the court below was not erroneous.  But it can hardly be said that in that case the court had rendered any judgment at all, because the retraction was concurrent with the announcement of the first conclusion, and the intended judgment was expressly held in abeyance to await further consideration.  And the concluding sentence in the short opinion of this court in that case must be considered with reference to the facts of the case.  No such facts appear in *Cook* v. *Cook.*

None of the other cases cited by respondent from this court are in point.

The fact that the decree was entered upon the petition of Richards is of no significance. It was the duty of the court to have the judgment entered, no matter by whom its attention was called to the subject.

The mere absence of findings would not render a judgment void in any case; and in a case of default, findings are not necessary, and form no part of the judgment roll. (Code Civ. Proc., sec. 670; *Mulcahy* v. *Mulcahy*, 51 Cal. 626; *Fox* v. *Fox*, 25 Cal. 587.)

There was no necessity for any notice to Theodore T. Cook before the entry of the judgment. It was the duty of the clerk at any time after the rendition of the judgment to enter it.

And the judgment having been rendered in the lifetime of the plaintiff, Emma Cook, there was no error in entering it after her death. There are abundant English and American authorities to this point; but there is no need of citing them here, because this court has so held expressly in *Franklin* v. *Merida*, 50 Cal. 289; 95 Am. Dec. 129. That case was an action of ejectment. On the 2d of October, 1869, the court made the following order for judgment in favor of plaintiff, and it was entered by the clerk in his book of minutes of the court: "This cause having been heretofore tried before the court without a jury, and submitted for consideration and decision, it is now ordered that plaintiff in this cause have judgment against the defendants for the possession of the premises described in the complaint, together with costs of suit." No further entry was made by the clerk until the first day of October, 1874,—five years afterward,—when he entered up and recorded a formal judgment. An execution—or writ of restitution—was issued on this judgment, and the successors in interest of the defendant Merida were put out. They moved to be restored to the possession; and upon the

hearing of that motion, it appeared that when the judgment was entered the plaintiff Franklin was dead; and that the judgment had been entered, and the writ issued, at the request of one Van Nest, to whom the title to the land had come, through mesne conveyances, from said Franklin, deceased. It appeared, also, that the judgment was entered on October 1, 1874, as of that date, and not *nunc pro tunc* as of October 2, 1869; and thereupon the attorney for Van Nest moved to amend the judgment so as to make it appear to be entered as of October 2, 1869, and in like manner to amend the writ of restitution, and the court below allowed the said motions to amend, but denied the application of the successors of the defendant to be restored to possession. Upon appeal the point made was, that the judgment was entered after the death of the plaintiff. But this court took the opposite view, and in its opinion uses this language: "There was no necessity for an amendment of the judgment. It was *rendered* October 2, 1869, in the lifetime of plaintiff, and recorded October 1, 1874, after his death. Nor was there any necessity to amend the writ of execution, for though it erroneously recited that the judgment had been rendered on the first day of October, 1874, still it otherwise correctly referred to the judgment in such a manner as to identify it. In these respects the order below was erroneous; but we think that under the circumstances the motion to restore the defendants to possession was correctly denied. The writ, though issued after the death of the judgment plaintiff, and in his name, was, in point of fact, issued and executed at the instance of and for the benefit of Van Nest, who is conceded to be the successor of the judgment plaintiff. Had he, as such successor in interest, applied regularly for the writ in the first instance, the court would have awarded it to him. What has been done is, therefore, correct in substance, though irregular in point of procedure. It is hardly worth while to turn Van Nest out, when it is

clear that he must be immediately put back into posses-
sion." This case is determinative, not only of the point
immediately under discussion, but of nearly every point
made by respondent in the case at bar. The entry of
the judgment in *Cook* v. *Cook*, on September 8, 1885,
was proper, and perhaps necessary in order to furnish
the requisite proof of the judgment when it was sought
to be introduced as evidence in another proceeding.

(It may be well to observe that in the case of a statu-
tory judgment entered by the clerk upon the rendition
of a verdict by a jury, it may be fairly contended that
the only judgment is the judgment actually entered by
the clerk.)

Our conclusion is, that under the circumstances here
presented, the judgment in the said case of *Cook* v. *Cook*
was rendered on the 23d of April, 1880, and that the
divorce between said parties must be held to have been
of that date, and that consequently the court below erred
in sustaining the objections to the introduction of said
judgment roll, and in excluding evidence of the marriage
of said Emma Cook and said Richards after said twenty-
third day of April, 1880.

Of course we have no commendation for the neglect
of the clerk to enter the judgment in *Cook* v. *Cook* im-
mediately after it was pronounced, or for the failure of
the attorney of the plaintiff in that action to see to it that
the judgment was then entered. But many of the most
perplexing questions presented here arise out of the want
of care, or the want of capacity, of attorneys and other
officers of courts. It is the duty of the court, however,
to protect the rights of litigants even against the inca-
pacity of their agents, except where such incapacity has
placed those rights beyond the reach of legal justice.

2. The decree of distribution was made in this case on
the petition of the administrator. In his petition, after
stating what property of the estate there was in his hands,

the payment of debts and taxes, and all other matters showing that the estate was in condition to be finally distributed, he further alleges that the deceased left certain other property in the state of New York, which came into the hands of the said William W. Richards, which, he alleges, Richards never accounted for, and prays that Richards be cited to account for such property, and that if Richards be adjudged entitled to any portion of said estate that he be charged with said property left by deceased in said state of New York. To the petition the appellant Miller demurred generally, upon the ground that an action for an accounting against Richards could not properly be united with a petition for final distribution, and specially to that part which seeks to require Richards to account for the New York property, for want of jurisdiction, etc. The court overruled the demurrer, and found that Richards received certain property left by deceased in New York; but as the court found that Richards was not an heir, no mention is made of the matter in the decree. We think that the demurrer should have been sustained. We do not see how a petition which goes upon the theory that the administration is ready to be closed, and the estate is in a condition to be finally distributed, can properly include averments and a prayer which start the estate upon a fresh career of litigation,—even assuming that the court might have jurisdiction over property left by the deceased in New York, and that in a proceeding for the final distribution of the estate the probate court had jurisdiction to determine such equities as are asserted in the petition, and that the administrator could take a part in favor of one heir as against another.

The decree and order appealed from are reversed, and the cause remanded for further proceedings in accordance with this opinion.

PATERSON, J., SHARPSTEIN, J., and SEARLS, C. J., concurred.

THORNTON, J., dissenting.—I dissent, and adhere to my opinion heretofore filed.

The following is the opinion of Mr. Justice THORNTON above referred to, rendered on the 26th of April, 1888:—

THORNTON, J.—Emma Cook was never divorced from Theodore T. Cook. A divorce is not granted until the final decree is entered, and in the case of *Cook* v. *Cook* there was no entry of a final decree. The order of the 23d of April, 1880, in *Cook* v. *Cook*, was a direction that a decree dissolving the bonds of matrimony be entered, but it does not appear that this order was ever complied with. The attempt of the court on the 7th of September, 1885, to impart validity to the alleged marriage of Emma Cook with William W. Richards after the 23d of April, 1880, by a *nunc pro tunc* decree dissolving the bonds of matrimony between Emma Cook and Theodore T. Cook, could not have any such effect. As there was no decree dissolving the bonds of matrimony between the Cooks on the 3d of May, 1880, when it is claimed a marriage was had between Emma Cook and William W. Richards, and no such decree was ever entered during the lifetime of Emma Cook, after which a marriage was celebrated between Richards and Emma Cook, it cannot be held that there was ever a valid marriage between the parties last named.

The *nunc pro tunc* decree was made long after the death of Emma Cook, which took place in November, 1883. She was not divorced at the time of her death, and we cannot perceive how after that time the relation of Emma Cook to Theodore T. Cook could be changed by any decree of the court. The court below did not err in holding Theodore T. Cook the husband of Emma Cook at the time of her death, and in ruling out the judgment roll in *Cook* v. *Cook*.

This appeal is prosecuted by William E. Miller, as the assignee of William W. Richards of the share of Emma

Cook's estate, claimed by Richards as her husband. And as it appears that Richards was never the husband of the decedent, the appellant Miller can have no interest in any other question presented on this appeal.

Rehearing denied.