Benjamin **SMEDLEY**, Superintendent, Alaska State Jail, Appellant.

v.

Bertley Allen **HOLT**, Appellee.

No. 2252.

Supreme Court of Alaska.

Oct. 6, 1975.

Stephen G. Dunning, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, Norman C. Gorsuch, Atty. Gen., Juneau, for appellant.

Phillip P. Weidner, Asst. Public Defender, Herbert D. Soll, Public Defender, Anchorage, for appellee.

Before RABINOWITZ, Chief Justice, and CONNOR, ERWIN, BOOCHEVER and BURKE, Justices.

## OPINION

BOOCHEVER, Justice.

The court is required on this appeal to decide whether the documents submitted by the State of California adequately support that state's request for the extradition of appellee Holt.

In 1958, Holt was charged in California with four counts of second degree burglary stemming from transgressions involving four separate telephone booths. According to the record before us, he has either been awaiting disposition of the charge, on probation, in jail or on parole for all of the intervening 17 years, although there is no indication in the record that he has during that period again transgressed a criminal law protecting either persons or property.[1] As, in Victor Hugo's immortal *Les Miserables*, Jean Valjean was relentlessly chased over the years by Javert, so it seems that Holt has been pursued by the law enforcement agencies of California.

Although charged with the burglaries in 1958, Mr. Holt was first brought before the Los Angeles Superior Court on these charges on January 18, 1962, at which time the court, upon his conviction on one of the charges, suspended imposition of sentence and placed Mr. Holt on probation for 5 years. For reasons not indicated by the record, Mr. Holt again appeared before the California court which, on April 9, 1964, entered a judgment revoking Holt's probation. The judgment further states that Mr. Holt was to be punished by imprisonment in the state prison for the term prescribed by law.[2]

Mr. Holt apparently was imprisoned in California from April 1964 until October 21, 1965 when he was released on parole. At this point, the record becomes less than clear as to the precise fate which befell Mr. Holt concerning his contacts with the California authorities. The record does show that on February 1, 1972, the Adult Authority refixed Holt's term at 6½ years, and that later that month, Holt was released on parole.

In December 1972, Mr. Holt left his place of residence without the permission of his parole officer, and moved to Alaska where he was arrested in August 1973 on a California warrant charging him with violation of his parole. The Governor of California requested extradition of Mr. Holt, and Governor Egan, the Governor of Alaska at that time, honored the request, issuing a governor's warrant for Holt's arrest. This warrant, however, was quashed by order of the superior court of the State of Alaska on the basis of the failure of the California authorities to furnish a copy of the judgment in compliance with the requirements of AS 12.70.020(b) which provides:

> (b) No demand for the extradition of a person convicted of a crime in another state shall be recognized by the governor of this state unless made in writing and containing the following:
>
> (1) a statement by the executive authority of the demanding state that the person claimed has escaped from confinement or has broken the terms of bail, probation, or parole;
>
> (2) a copy of the judgment of conviction or of a sentence imposed in execution thereof; the copy must be authenti-

1. The record does not disclose the reason for the revocation of Holt's original probation nor for the revocation of his subsequent paroles other than that his most recent parole was revoked because he left California and moved to Alaska.

2. Under the California indeterminate sentencing system, conviction of a crime initial-

ly results in a sentence extending up to the maximum term prescribed by statute. *In re Mills*, 55 Cal.2d 646, 12 Cal.Rptr. 483, 488, 361 P.2d 15, 20 (1961); *In re Costello*, 262 F.2d 214 (9th Cir. 1958). Holt was convicted of 1 count of second degree burglary for which California Penal Code Annotated § 461 (Deering 1971) provides a sentence of from 1 to 15 years.

cated by the executive authority making the demand.

Undaunted, the California authorities filed a second request for Holt's extradition on January 29, 1974, and a second governor's warrant for Mr. Holt's arrest was issued pursuant thereto. This warrant was also quashed by order of the superior court, once again due to the alleged inadequacy of the supporting papers forwarded by the State of California. Specifically, the superior court held the papers to be deficient in the following respect:

> There being no judgment or sentence imposed in execution thereof submitted with the application, there is a failure to meet the requirements of AS 12.70.-020(b)(2) and the extradition must fail.

Mr. Smedley, the Superintendent of the Alaska State Jail, appealed, arguing that the papers submitted by California are adequate, and that the lower court erred in its contrary decision. Appellee Holt urges us to uphold the lower court decision and to find the papers insufficient. According to Holt, the papers may be found inadequate for any one of three reasons: (1) the failure of the California sentencing judge to sign the judgment; (2) inconsistencies in the papers concerning the date of the offense; or (3) the failure of the papers to demonstrate California jurisdiction over Holt from 1967 to 1972.

■ Prior to reaching the merits of this appeal, we must first determine whether the state may appeal from the judgment of the lower court granting Holt's petition for a writ of habeas corpus. AS 12.75.230 provides in pertinent part:

> A party to a proceeding by habeas corpus may appeal from the judgment of the court refusing to allow the writ *or a*

final judgment therein in like manner and with like effect as in an action. (emphasis added)

Holt contends that the above statute authorizes an appeal only by an imprisoned petitioner. While the statute does indeed allow an "appeal from the judgment of the court [denying] the writ", it also contemplates appeal by "[a] party to a proceeding by habeas corpus . . . from . . . a final judgment therein in like manner and with like effect as in an action". The representative of the state is "a party", and the judgment granting the writ was a "final judgment". We, therefore, are of the opinion that the legislature used the word "or" in the statute in its truly disjunctive sense and intended by means of this second clause to allow appeals by the state from judgments by the lower court granting the writ.[3] Accordingly, we have jurisdiction to hear this appeal.

■ Turning to the merits, we find Holt's contention that the requisition papers are inadequate due to the absence of the sentencing judge's signature from the judgment easy to resolve. While Holt does refer to a number of cases from states other than California which require that judgments be signed,[4] a California case dealing with this specific issue reaches an opposite conclusion. In *In re Steiner*,[5] the court stated:

> And the law pertaining to judgments generally recognizes the propriety of an oral pronouncement which is carried into the court minutes. The judge's signature to a written judgment is not essential. *Brown v. Superior Court,* 70 Cal. App. 732, 735, 234 P. 409; *In re Cook,* 77 Cal. 220, 227, 17 P. 923, 19 P. 431, 1 L.R.A. 567; *Crim v. Kessing,* 89 Cal.

3. *See State ex rel. Bond v. Langum,* 135 Minn. 320, 160 N.W. 858 (1917), *cert. denied,* 242 U.S. 653, 37 S.Ct. 246, 61 L.Ed. 547 (1917); *Henderson v. James,* 52 Ohio St. 242, 39 N.E. 805 (1895); *Ex parte Murray,* 112 S.C. 342, 99 S.E. 798 (1919).

4. *Barfield v. Atlantic Coast Line Railroad Co.,* 189 So.2d 825 (Fla.App.1966); *Young*

*v. Geter,* 187 So. 830 (La.App.1939); *James v. St. Charles Hotel Co.,* 145 La. 1004, 83 So. 222 (1919); *Noble v. Texacon Industries, Inc.,* 367 S.W.2d 872 (Tex.Civ.App.1963); *Osborne v. Osborne,* 60 Wash.2d 163, 372 P.2d 538 (1962).

5. 134 Cal.App.2d 391, 285 P.2d 972, 976 (1955).

478, 488, 26 P. 1074. Except where findings are specifically required . . . a judgment is rendered when decision is announced and carried into the minutes.

Since the validity of the judgment herein submitted must be ascertained by California law, we find the unsigned judgment valid.

■ Holt's second allegation of error may also be readily disposed of. The record reveals that the information and complaint in this case deal with offenses committed in 1958. In the Application for Requisition, where there is to be inserted the date of the commission of the offense, there is instead the date of the issuance of judgment, or April 9, 1964. Holt would have us find this discrepancy fatal. By referring to the record as a whole, however, it is clear that the reason for the variance in dates is a mere clerical error which could neither mislead nor harm Holt.[6] As such, we find this inconsistency insufficient to justify a holding that the governor's warrant of arrest was issued without proper cause.[7]

■ Of significantly greater merit is Holt's assertion that the papers submitted by the State of California do not demonstrate that state's jurisdiction over him for the years 1967 through 1972 and, therefore, cannot support a demand for his extradition. As noted previously, AS 12.70.-020(b)(2) requires in part that a demand for extradition be accompanied by "a copy of the judgment of conviction or a sen-

tence imposed in execution thereof. . . . ." While fully cognizant of the fact that the requirements are stated in the alternative (i. e., the demand must be accompanied either by a copy of the judgment or of the sentence), in the instant case, given the unique nature of California sentencing law, we find that the mere submission of a judgment without complete documentation of sentencing renders inadequate the papers submitted in support of California's demand for the extradition of Mr. Holt.

■ The purpose of AS 12.70.020(b)(2) is to require that the demanding state assure the asylum state that the person sought is still under sentence by the former state and, therefore, is subject to a demand for extradition by that state. Without such a requirement "the demanding state could activate this state's extradition procedure by merely saying in the demand that the person claimed is a fugitive".[8] In many cases, the judgment of conviction will specify the duration of the term to be served by the person whose extradition is sought,[9] and, therefore, will in itself allow the fugitive state to determine whether the person sought is then under sentence by the demanding state.

Under California's indeterminate sentence law, however, a person convicted of a public offense, punishment for which involves confinement in a state prison, is sentenced by the court, but the court has no discretion to fix the duration of the sentence.[10] The sentence imposed by the

---

6. *See Andrews v. State,* 241 Ind. 180, 169 N.E.2d 193 (1960), *cert. denied,* 365 U.S. 861, 81 S.Ct. 829, 5 L.Ed.2d 824 (1961) ; *Ex parte Bradley,* 456 S.W.2d 370 (Tex.Cr.App. 1970).

7. *See Wortham v. State,* 519 P.2d 797 (Alaska 1974).

8. *Blasi v. State,* 192 So.2d 307, 309 (Fla. App.1966). There the State of Massachusetts attempted to obtain extradition of a person who had been tried, convicted, sentenced and had violated his probation without submitting either a copy of the judgment or of the sentence imposed. In reversing the lower court

and granting a writ of habeas corpus, the court stated that:

> if the person demanded has been tried, convicted and sentenced and had broken the terms of his probation, then the demanding state is required to accompany the demand with a copy of the sentence imposed, together with a statement that the person claimed has broken the terms of his probation . . . . 192 So.2d at 309.

9. *See, e. g., Ex parte Glasper,* 170 Tex.Cr.R. 628, 343 S.W.2d 712 (1961).

10. California Penal Code Annotated § 1168 (Deering 1971).

court always provides for a term up to the maximum provided for by law.[11] It then becomes the responsibility of the Adult Authority to fix the exact term to be served if it is decided that the term should be less than the maximum.[12]

Not only may the Adult Authority fix the original term to be served by the prisoner, the "primary term", but it may also grant parole, and at any time prior to the expiration of the primary term may refix the term.

As relevant to the sentencing of Mr. Holt in this case, the State of California has provided us with three documents: (1) a minute order placing Mr. Holt on 5 years probation in 1962; (2) a judgment entered in 1964 sentencing Mr. Holt to the term prescribed by law for his offense, and (3) a certificate of Adult Authority action refixing Mr. Holt's term at 6½ years in 1972. Since Mr. Holt's term was refixed in 1972, it can be assumed that prior to 1972, there was an initial fixing of his term, and yet nowhere in the record does there appear proper documentation of this action by the Adult Authority. The record does contain a summary of sentence data concerning Mr. Holt, but a majority of this court believes that such a summary cannot be considered a satisfactory substitute for proper documentation of action taken by the Adult Authority. A summary of sentence data is not "a copy of a sentence imposed in execution" of a judgment of conviction called for by AS 12.70.-020(b)(2) and is subject to possible inaccuracies occurring in its preparation. Thus, while the record reveals that the Adult Authority fixed Mr. Holt's term sometime after 1964 and before 1972, it does not reveal the duration of this term in a form which the majority of this court would recognize. Without this information, we are unable to determine whether the refix-

ing of Mr. Holt's term was proper, i. e. whether it took place within the term originally fixed.[13] If the Adult Authority acted beyond its powers in refixing Holt's term, then there is no basis for this extradition request as Mr. Holt would not presently be under sentence by the State of California. On the other hand, if Mr. Holt's term was refixed during the period of his original term, then from a jurisdictional standpoint, the request for extradition may have a proper basis. It is not our task, however, to speculate as to the duration of the term originally fixed by the Adult Authority. Rather, it is incumbent on the State of California to document adequately its demand for extradition. Specifically, it must present such papers as are necessary to demonstrate that the person whose extradition is sought is presently under sentence by the demanding state. In the present case, the State of California has not properly discharged this duty.

Even if the summary of sentence data is considered to be valid, however, a recent California Supreme Court case may indicate that the February 8, 1972 resetting of Holt's sentence was beyond the power of the Adult Authority. In *In re Rodriguez*, 14 Cal.3d 639, 122 Cal.Rptr. 552, 537 P.2d 384 (1975), there is dictum implying that such a refixed term may not exceed the primary term.

On the other hand, this discretionary power also permits the Authority to retain a prisoner for the full primary term if his release might pose a danger to society (*People v. Morse* (1964) 60 Cal.2d 631, 648 [36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810]) and to revoke parole, rescind an unexecuted grant of parole and refix a reduced term at a greater number of years up to the primary term if the prisoner or parolee engages in con-

---

11. *In re Rodriguez*, 14 Cal.3d 639, 122 Cal. Rptr. 552, 537 P.2d 384 (1975); *In re Bandmann*, 51 Cal.2d 388, 333 P.2d 339 (1958); *People v. Rivas*, 85 Cal.App.2d 540, 193 P.2d 151 (1948).

12. California Penal Code Annotated § 3020 (Deering 1971). *See In re Mills*, 55 Cal.2d 646, 12 Cal.Rptr. 483, 361 P.2d 15 (1961); *In re Costello*, 262 F.2d 214 (9th Cir. 1958).

13. *See* note 16 below.

duct which affords cause to believe he cannot or will not conform to the conditions of parole, or would pose a danger to society if free. (§§ 3020, 3060; *In re McLain* (1960) 55 Cal.2d 78 [9 Cal.Rptr. 824, 357 P.2d 1080]. See also, *In re Prewitt, supra,* 8 Cal.3d 470 [105 Cal. Rptr. 318, 503 P.2d 1326].) 122 Cal. Rptr. at 562, 537 P.2d at 394.

· Assuming that *Rodriguez* prohibits the Adult Authority from refixing a term so as to run beyond the term originally set by the Authority,[14] the maximum termination of Holt's sentence would be January 8, 1972.[15] The summary of sentence indicates that Holt's primary term was set at 6½ years on July 8, 1965. According to the implication in *Rodriguez*, it was beyond the power of the Authority to resentence Holt for a term extending beyond January 8, 1972. Thus, the refixing of his sentence on February 1, 1972 to run an additional 6½ years was invalid.[16]

14. The portion of the *Rodriguez* opinion impliedly limiting the power of the Adult Authority to refix a sentence so as to run beyond the primary term refers to West's Ann.Pen. Code sec. 3020 which reads:

> In the case of all persons heretofore or hereafter sentenced under the provisions of Section 1168 of this code, the Adult Authority may determine and redetermine, after the actual commencement of imprisonment, what length of time, if any, such person shall be imprisoned. . . .

Addressing itself to Pen.Code sec. 3020 in the case of *In re Lynch,* 8 Cal.3d 410, 105 Cal.Rptr. 217, 503 P.2d 921 (1972), the California Supreme Court stated:

> . . . the Adult Authority may, for good cause (*In re McLain* (1960) 55 Cal.2d 78, 87, 9 Cal.Rptr. 824, 357 P.2d 1080) and at any time prior to a defendant's final discharge, extend a previously fixed lesser term by refixing it at any period up to and including the statutory maximum. Stated otherwise, a defendant under an indeterminate sentence has "no vested right" to have his sentence fixed at the term first prescribed by the Adult Authority "or any other period less than the maximum sentence provided by statute." (*In re Cowen* (1946) 27 Cal.2d 637, 641, 166 P.2d 279, 281.)

105 Cal.Rptr. at 221, 503 P.2d at 925.

*See also In re Grey,* 11 Cal.3d 554, 114 Cal. Rptr. 104, 105, 522 P.2d 664, 665 n. 2 (1974); *In re Bye,* 12 Cal.3d 96, 115 Cal. Rptr. 382, 388, 524 P.2d 854, 860 (1974); *In re Schoengarth,* 66 Cal.2d 295, 57 Cal.Rptr. 600, 425 P.2d 200 (1967); *In re McLain,* 55 Cal.2d 78, 9 Cal.Rptr. 824, 357 P.2d 1080 (1960), *appeal dismissed,* 368 U.S. 10, 82 S. Ct. 18, 7 L.Ed.2d 18 (1961); *People v. Clutchette,* 39 Cal.App.3d 561, 114 Cal.Rptr. 509 (1974); *Perkins v. Craven,* 469 F.2d 659 (9th Cir. 1972); *Hayes v. Field,* 298 F.Supp. 309 (C.D.Cal.1969). Neither Pen.Code 3060 nor the case of *In re Prewitt,* both cited in the relevant portion of *Rodriguez,* specifically addresses the issue of length of sentence redetermination by the Adult Authority. *In re McLain,* cited in the same portion of the *Rodriguez* opinion, does address the issue but holds that the Adult Authority's order of revocation where good cause exists has the effect of revoking parole and restoring a sentence previously set at 7 years to the 20-year maximum for the offense.

We note, however, that in *People v. Wingo,* 14 Cal.3d 169, 121 Cal.Rptr. 97, 534 P.2d 1001 (1975), decided a month before *Rodriguez,* it was held that the constitutionality of a sentence could be dependent upon the initial maximum sentence set by the Authority (the "primary term" as defined in *Rodriguez*). The majority of the court rejected the contention of the dissenters that *Wingo* altered the indeterminate sentence law, by restricting the power of the Authority to resentence to a term longer than that of the primary sentence. 14 Cal.3d 169, 121 Cal. Rptr. 97, 534 P.2d at 1013, n. 16.

Accordingly, it may be that the California Supreme Court, by stating in *Rodriguez* that the Adult Authority had power to "refix a reduced term at a greater number of years up to the primary term" (122 Cal.Rptr. at 562, 537 P.2d at 394), was not implying a lack of power to refix the sentence for a longer term but was merely not passing on that issue.

15. Since Holt was incarcerated on April 21, 1964, the 6½ year period may run from that date rather than the date of sentencing in which event the term expired on October 21, 1970.

16. According to Holt's summary of sentence, the resentencing of February 1, 1972 was based on an arrest of Holt which occurred on June 17, 1971, and a parole suspension occurring on October 15, 1971. Thus, the formal resentencing on February 1, 1972 occurred after the initial 6½ year period of Holt's primary term. It appears clear that once a prisoner completes his term as originally fixed by the Adult Authority, the prisoner is en-

The decision of the superior court quashing the warrant for Mr. Holt's arrest is affirmed.

Affirmed.

BURKE, J., with whom ERWIN, J., joins, dissenting in part, concurring in part.

BURKE, Justice, with whom ERWIN, Justice, joins, (dissenting in part, concurring in part).

I dissent from that portion of the majority opinion holding that we may not rely upon the information provided by the "summary of sentencing data", in judging the sufficiency of the demand for Holt's extradition.

Holt is an alleged parole violator. In *Wortham v. State*[1] this court held:

> The probable cause requirements for rendering up an alleged parole violator are . . . less stringent than the requirements for extraditing one who has only been charged with and not convicted of a crime.

The majority's refusal to give any weight to the "summary" is, I believe, an overly technical application of the requirements of AS 12.70.020(b).

Given the information to be gained by a review of the entire record, including that supplied by the "summary of sentencing data", it appears to me that the result in this case is controlled by the recent decisions of the California Supreme Court in *In re Rodriguez*[2] and *People v. Wingo*.[3]

In all other respects I concur.

---

titled to be discharged, and there can be no subsequent refixing of his term. *In re Beasley*, 256 Cal.App.2d 721, 64 Cal.Rptr. 540 (1967); *In re Shull*, 23 Cal.2d 745, 146 P. 2d 417 (1944). In the past, however, the California courts have regarded a preliminary order revoking parole such as the one which issued on October 15, 1971 as having the effect of vacating the reduced term and reinstating the balance of the maximum term remaining to be served at that time. *In re*

*Bennett*, 71 Cal.2d 117, 77 Cal.Rptr. 457, 454 P.2d 33 (1969).

1. 519 P.2d 797, 800 (Alaska 1974).

2. 14 Cal.3d 639, 122 Cal.Rptr. 552, 537 P.2d 384 (1975).

3. 14 Cal.3d 169, 121 Cal.Rptr. 97, 534 P.2d 1001 (1975).